1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**MICHAEL N. FEUER,** City Attorney (SBN 111529*)
**TERRY KAUFMANN MACIAS,** Assistant City Attorney (SBN 137182)
**KENNETH T. FONG,** Deputy City Attorney (SBN 140609)
200 North Main Street
701 City Hall East
Los Angeles, California 90012-4131
Telephone: (213) 978-8235
Facsimile: (213) 978-8090
Email: kenneth.fong@lacity.org

Attorneys for Defendant
City of Los Angeles

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF LOS ANGELES

| | |
|---|---|
| THE FOLB PARTNERSHIP, a California partnership and PARAMOUNT CONTRACTORS AND DEVELOPERS, INC., a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF LOS ANGELES, a California municipal corporation and DOES 1 through 10, inclusive,<br><br>Defendant. | Case No.  CV-15-06153 FMO (PJW)<br><br>Hon. Fernando Olguin<br><br>**DEFENDANT CITY OF LOS ANGELES' MOTION TO DISMISS COMPLAINT** (FRCP Rule 12(b)(6))<br><br>[Filed concurrently with City of Los Angeles' Notice of Motion to Dismiss Complaint; Request for Judicial Notice; [Proposed] Order]<br><br>Hearing:<br>Date:  November 12, 2015<br>Time:  10:00 a.m.<br>Department: 22 |

1

2

**NOTICE OF MOTION AND MOTION**
TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3

4

5

6

7

8

9

10

PLEASE TAKE NOTICE that on November 12, 2015, at 10:00 a.m., or as soon thereafter as counsel may be heard in Courtroom 22 of the Honorable Fernando Olguin, United States District Court Judge, of the United States Courthouse, 312 North Spring Street, Los Angeles, California, 90012-4701, CITY OF LOS ANGELES (City) will move the court to dismiss defendant Paramount Contractors and Developers, Inc. and defendant The Folb Partnership's action for failure to state a claim pursuant to FRCP 12(b)(6) because three prior decisions have res judicata effect here and because Paramount and Folb's claims lack merit.

11

12

13

14

15

The motion will be based on this Notice of Motion, the attached Memorandum of Points and Authorities, the concurrently filed Request for Judicial Notice, the pleadings and other papers filed herein, and any oral argument made before the court. This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on August 10, 12, and September 9, 2015.

16

17

18

Dated: September 21, 2015     **MICHAEL N. FEUER,** City Attorney
        **TERRY KAUFMANN MACIAS,** Asst. City Attorney
        **KENNETH T. FONG,** Deputy City Attorney

19

20

21

By

**KENNETH T. FONG**
Deputy City Attorney

22

23

24

Attorneys for Defendant
City of Los Angeles

25

26

27

28

2

# TABLE OF CONTENTS

**PAGE**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 1

I.    INTRODUCTION ................................................................................................ 1

II.   FACTS ............................................................................................................... 2

    A.    The Citywide Sign Regulations ............................................................. 2

    B.    The Hollywood SUD previously allowed supergraphic signs,
          but now prohibits them ............................................................................ 2

    C.    The Hollywood SUD previously allowed Temporary Special
          Displays, but now prohibits them ......................................................... 3

    D.    The Amended Hollywood SUD allows Temporary Signs ..................... 3

    E.    In 2005, Paramount received approvals for Temporary Special
          Displays at the Sunset Boulevard sites ................................................ 4

    F.    In 2015, Paramount applied for various permits for supergraphic type
          signs at the Sunset Boulevard sites (current lawsuit) ........................... 4

    G.    The City prevailed in three prior lawsuits brought by Paramount

          1.    *Paramount I* ............................................................................... 4

          2.    *Paramount II* .............................................................................. 6

          3.    *Paramount III* ............................................................................ 6

III.  DISCUSSION ..................................................................................................... 6

    A.    Rule 12(b)(6) authorizes dismissal of an action that fails
          to state a claim. ...................................................................................... 6

    B.    In *Paramount III*, the state Court of Appeals concluded that
          Paramount's prior federal lawsuits have res judicata effect under
          California law.. ....................................................................................... 7

    C.    Under federal law, res judicata also precludes all of Paramount's
          claims in this latest lawsuit ................................................................... 9

i

**TABLE OF CONTENTS (CONT'D)**

**PAGE**

D.   Even if res judicata does not foreclose Paramount's claims,
the First Cause of Action fails on the merits because *Reed v. Town
of Gilbert* does not affect the validity of the City's sign regulations....13

1.   Paramount's challenge to LAMC section 14.4.16 under *Reed*
lacks merit ...................................................................................13

2.   Paramount's challenge to "other types of off-site signs" under
*Reed* lacks merit ..........................................................................16

3.   Paramount's challenge to restrictions on political campaign
signs lacks merit ...........................................................................16

4.   Each of these three arguments also makes a challenge based
on the California Constitution, which is foreclosed by the
Ninth Circuit's prior decisions in *Paramount I* and *Vanguard v.
City of Los Angeles*.......................................................................17

E.   The first part of Paramount's Second Cause of Action lacks merit
because Paramount is not entitled to grandfather rights for
supergraphic signs at the Sunset Boulevard sites .................................18

IV.   CONCLUSION ............................................................................................20

ii

# TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

*Agostini v. Felton*,

    521 U.S. 203, 235-38 (1997) ...................................................................... 14

*Amin v. Khazindar*,

    112 Cal.App.4th 582, 589-590 (2003)............................................................ 7

*Apparel Art Intern., Inc. v. Amertex Enterprises Ltd.*,

    48 F.3d 576 (1st Cir. 1995) ................................................................... 10, 12

*Aunyx Corp. v. Canon U.S.A., Inc.*

    978 F.2d 3 (1st Cir. 1992) ..................................................................... 10, 12

*Bell Atl. Corp. v. Twombly*,

    550 U.S. 544, 570 (2007) .......................................................................... 6

*Branch v. Tunnell*,

    14 F.3d 449, 454 (9th Cir. 1994) ................................................................ 7

*Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*,

    447 U.S. 557 (1980) ............................................................................ 15, 16

*Citizens for Free Speech, LLC v. County of Alameda*,

    No. C14-02513 CRB (N.D. Cal. July 16, 2015) ......................................... 15

*Federation of Hillside & Canyon Assns. v. City of Los Angeles*,

    126 Cal.App.4th 1180, 1202 (2004)............................................................ 7

*Frommhagen v. Board of Supervisors*,

    197 Cal.App.3d 1292, 1299-1300 (1987)..................................................... 7

*Johnson v. Symantec Corp.*,

    58 F. Supp. 2d 1107, 1111 (N.D. Cal. 1999) ............................................. 18

*Kale v. Combined Ins. Co. of America*,

    924 F.2d 1161 (1st Cir. 1991) ................................................................... 9

# TABLE OF AUTHORITIES (CONT'D)

**CASES**                                                                       **PAGE(S)**

*Koury v. Canton*,

    2005 U.S. Dist. LEXIS 44747, *32 (2005) ................................................. 12

*Metromedia, Inc. v. City of San Diego*,

    453 U.S. 490 (1981) ............................................................................ 1, 14, 15

*Metropolitan Dade County v. E.B. Elliott Advertising Co.*,

    214 So. 2d 511, 512 (1968) ......................................................................... 12

*Outdoor Systems, Inc. et al v. City of Mesa*,

    997 F.2d 604 (9th Cir. 1993) ...................................................................... 16

*Paramount Contractors and Developers, Inc. v. City of Los Angeles and*

  *Community Redevelopment Agency of the City of the City of Los Angeles*,

    805 F. Supp. 2d 977 (2011) .......................................................................... 6

*Paramount Contractors and Developers, Inc. v. City of Los Angeles and*

  *CRA/LA, a Designated Local Authority*,

    516 Fed. Appx. 614 (9th Cir. 2013)......................................................... 6, 17

*Reed v. Town of Gilbert*,

    135 S. Ct. 2218 (2015) ....................................... 1, 6, 13, 14, 15, 16

*Villacres v. ABM Industries Inc.*, 189 Cal.App.4th 562, 577 (2010) ......................... 7

*World Wide Rush, LLC v. City of Los Angeles*,

    606 F.3d 676, 682 (9th Cir. 2010) ........................................................... 1, 14


**STATUTES**

Los Angeles Municipal Code:

    Section 14.4.4(B)(9) ..................................................................................... 2

    Section 14.4.16 ........................................................... 3, 4, 11, 12, 13

1

2

**TABLE OF AUTHORITIES (CONT'D)**

3

**STATUTES**                                                                      **PAGE(S)**

4

Rules:

5

Federal Rules of Civil Procedure:

6

Rule 12(b)(6) ................................................................. 6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

v

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

This fourth lawsuit is just the latest chapter in an eight-year dispute between Paramount Contractors and Developers, Inc. and the City of Los Angeles regarding proposed supergraphic signs[1] at two sites on Sunset Boulevard in Hollywood.  During these eight years, Paramount has brought (and lost) three prior lawsuits to compel the City to grant permits for the supergraphic signs.  All three of these lawsuits arose from the same set of operative facts – redress for the City's allegedly unlawful restrictions on Paramount's right to install supergraphic signs at the two Sunset Boulevard sites.  Thus, res judicata bars Paramount from making any legal arguments that it made ***or could have made*** with regard to supergraphic type signs at those two sites and forecloses Paramount's entire current lawsuit.

Paramount's prior three lawsuits each involved other sites besides the Sunset Boulevard sites and in that vein this latest lawsuit adds The Folb Partnership[2] as a plaintiff with respect to a proposed temporary sign on Overland Avenue.  However, as with Paramount's prior three lawsuits, Paramount's Sunset Boulevard sites remain the focal point of this latest litigation.

Even if the Court were to reach the merits, Paramount's claims would be foreclosed as a matter of law.  The First Cause of Action argues that the City's temporary sign regulations and sign ban are content-based under *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015).  These arguments lack merit because both of these regulations are content neutral under *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490 (1981).  *Reed* has not overruled *Metromedia*, so *Metromedia* remains good law.

---

[1] Supergraphic signs are "large-format signs projected onto or hung from building walls. They are often made of large vinyl or mesh canvasses, which are hung with cables from the sides of buildings."  *World Wide Rush, LLC v. City of Los Angeles*, 606 F.3d 676, 682 (9th Cir. 2010).

[2] "Paramount" will be used hereafter to refer to both Paramount and The Folb Partnership.

The First Cause of Action also argues that the City is preventing the display of "political" messages on supergraphic signs at the Sunset Boulevard sites, while allowing commercial messages on supergraphic signs elsewhere.  This argument is a red herring.  Due to the City's ban on supergraphic signs in Hollywood, Paramount does not even have the right to erect supergraphic signs at these sites, let alone place "political" messages on them.

In addition, the First Cause of Action challenges the City's regulations under the California Constitution.  This claim lacks merit because the Ninth Circuit has held that the California Constitution does not provide greater protection for commercial speech than the First Amendment.

Finally, the first argument under the Second Cause of Action seeks grandfather rights for supergraphic signs at the Sunset Boulevard sites.  This argument lacks merit.  The only permits that Paramount received for those sites were for temporary special displays, which do not provide grandfather status.

For these reasons, this Court should grant the City's Motion to Dismiss.

## II.     FACTS

**A.     The Citywide Sign Regulations.**

Like many municipalities, the City of Los Angeles regulates commercial signs, including billboards. The Citywide Sign Regulations are codified at Chapter I, Article 4.4 of the Los Angeles Municipal Code (LAMC).  City's RJN, Exh. A.

**B.     The Hollywood SUD previously allowed supergraphic signs, but now prohibits them.**

The Citywide Sign Regulations prohibit all supergraphic signs that are not specifically permitted through the legislative adoption of a sign district.  LAMC, § 14.4.4(B)(9); RJN, Exh. A.  In 2004, the City adopted a sign district called the Hollywood Signage Supplemental Use District (Original Hollywood SUD or Hollywood SUD).  L.A. Ord. No. 176172; City's RJN, Exh. B.  Paramount's Sunset Boulevard Properties are located within the Hollywood SUD.  *The People of the State*

2

*of California et al v. Paramount Contractors and Developers, Inc. et al*, LASC Case No. B246564 (Filed Oct. 23, 2014)(10/23/2014 Decision), at p. 3; RJN, Exh. C.

Prior to 2010, the Hollywood SUD allowed a limited number of supergraphic signs, but conditioned approval of those signs on the removal of a specified number of legal non-conforming billboards or solid panel roof signs.  L.A. Ord. No. 176172, § 5 (B), 9; RJN, Exh. B.  In 2010, the City Council amended the Hollywood SUD to prohibit supergraphic signs (Amended Hollywood SUD).  L.A. Ord. No. 181340, § 5(B)(11); City's RJN, Exh. D.

**C.    The Hollywood SUD previously allowed Temporary Special Displays, but now prohibits them.**

Prior to 2010, the Hollywood SUD allowed Temporary Special Displays (TSD/TSDs).  L.A. Ord. No. 176172, § 7(O); RJN, Exh. B.  TSDs were intended to be used for "special events, such as . . . a film or play premiere . . . ."  *Id*., § 4; RJN, Exh. B.  While supergraphic signs were permanent, TSDs were temporary and could only be displayed for a total of 120 days in any calendar year.  *Id*., § 7(O)(1)(c); RJN, Exh. B. 10/23/2014 Decision, at p. 4; RJN, Exh. C.  The Amended Hollywood SUD no longer allow TSDs.  L.A. Ord. No. 181340; RJN, Exh. D.  However, "temporary signs," which are not limited to special events, are still allowed in Hollywood, as discussed below.

**D.    The Amended Hollywood SUD allows Temporary Signs.**

The Amended Hollywood SUD allows "temporary signs" under the criteria set forth in the Citywide Sign Regulations at LAMC § 14.4.16.  L.A. Ord. No. 176172, § 7(K); RJN, Exh. B.  Section 14.4.16 requires a sign permit for temporary signs that display commercial messages but does not require a sign permit for temporary signs that display noncommercial messages.  RJN, Exh. A.  A temporary sign may be displayed for up 30 days at a time, and not more than a total of 90 days in a calendar year.  LAMC § 14.4.6; RJN, Exh. A.

**E.     In 2005, Paramount received approvals for Temporary Special Displays at the Sunset Boulevard sites.**

The City approved TSDs for Paramount on March 6, 2005, at 6464 Sunset Boulevard and on December 31, 2005, at 6565 Sunset Boulevard.  Paramount used these approvals and obtained TSD permits on May 15, 2006, and June 29, 2006.  10/23/2014 Decision, at p. 3-4; RJN, Exh. C.

**F.     In 2015, Paramount applied for various permits for supergraphic type signs at the Sunset Boulevard sites (current lawsuit).**

In 2015, Paramount submitted the following sign applications for the Sunset Boulevard sites:  temporary signs to display "off-site" messages for a 30-day period, pursuant to LAMC section 14.4.16; grandfathered supergraphics signs to display "off-site" messages based on Section 6.K of Los Angeles Ordinance No. 181340; supergraphic signs to display political messages for up to a 30-day period; and wall signs to display "off-site" messages.  Complaint, ¶ 11.  Also in 2015, the Folb Partnership submitted applications for a temporary sign to display off-site messages at 3500 Overland Avenue. Complaint, ¶ 13.  City staff denied these applications.  Complaint, ¶ 3.

**G.     The City prevailed in three prior lawsuits brought by Paramount.**

Paramount has been in continuous litigation with the City over the erection of supergraphic signs at the two Sunset Boulevard sites for eight years, thus far.

**1.  *Paramount I.***

In 2007, Paramount filed its first lawsuit (*Paramount I*) concerning signs at the Sunset Boulevard sites in federal district court.  That lawsuit concerned large signs placed on the walls of "two large office buildings in the City of Los Angeles located on West Sunset Blvd. at 6464 and 6565 . . . ."  Complaint, CV-07-0159, at ¶¶ 8, 9; City's RJN, Exh. E.  At the time, Paramount was allowed to maintain such signs for 120 days per year under permits for "temporary special displays," also known as "TSDs."  Complaint, CV-07-0159, at ¶ 9; City's RJN, Exh. E.  After the 120-day

period expired, Paramount "refused to remove the signs or apply for permanent permits."  CV 07-0159, Order Re: Defendant's Motion For Summary Judgment (June 6, 2008)(06/06/2008 Order), at p. 2, lines 13-16; City's RJN, Exh. F.  Through this lawsuit, Paramount sought "the right to maintain such signs for twelve months out of the year" in the form of "supergraphics."  *Id*.; City's RJN, Exh. F.

Paramount claimed that the Original Hollywood SUD's distinctions between various types of signs – "wall signs, mural signs, supergraphics and TSDs" – were used by the City as a "vehicle to illegally allow messages to be posted only by favored speakers while prohibiting similar speech by all others."  Complaint, CV-07-0159, at ¶ 11; City's RJN, Exh. E.  Paramount claimed that these distinctions and the City's exercise of unfettered discretion violated the First Amendment.  Complaint, CV-07-0159, at ¶¶ 18–20; City's RJN, Exh. E.

On July 23, 2007, the district court "issued a detailed 35-page Order granting in part and denying in part" the City's motion to dismiss for failure to state a claim.  That order dismissed many of Paramount's claims, including all of its "challenges to TSD signs" and most of its challenges to the "City's supergraphic sign regulations."  CV 07-159 ABC, Order Re:  Defendant's Motion to Dismiss (July 23, 2007); City's RJN, Exh. G; 06/06/2008 Order, at p. 3, lines 21-24, p. 4, lines 7-8, 17-28; City's RJN, Exh. F.  The district court then granted the City's motion for summary judgment on Paramount's remaining claims.  06/06/2008 Order, at p. 1, lines 25-27; City's RJN, Exh. F.

In 2011, the Ninth Circuit Court of Appeals dismissed *Paramount I* as moot in light of the 2010 amendment of the Hollywood SUD.  The 2010 amendment eliminated all of Paramount's causes of action.  It did so by prohibiting new supergraphic signs, along with the sign reduction and the City's delegation of authority to the Community Redevelopment Agency that were part of the supergraphic approval process. *Paramount Contractors and Developers, Inc. v. City of Los Angeles*, 434 Fed. Appx. 662 (9th Cir. 2011); RJN, Exh. H.

5

### 2. *Paramount II.*

In 2008, Paramount filed its second lawsuit (*Paramount II*) concerning these signs in federal district court. In that lawsuit, Paramount repeated its challenges to the Original Hollywood SUD. Paramount also challenged the 2010 supergraphics ban. The district court dismissed Paramount's entire lawsuit. *Paramount Contractors and Developers, Inc. v. City of Los Angeles and Community Redevelopment Agency of the City of the City of Los Angeles*, 805 F. Supp. 2d 977 (2011). The Ninth Circuit affirmed the dismissal of Paramount's lawsuit on the grounds that the pre-2010 claims were moot and that the 2010 supergraphics ban withstood a First Amendment challenge. *Paramount Contractors and Developers, Inc. v. City of Los Angeles and CRA/LA, a Designated Local Authority*, 516 Fed. Appx. 614 (9th Cir. 2013); RJN, Exh. I.

### 3. *Paramount III.*

In 2010, the People and the City filed a criminal enforcement action against Paramount in state court concerning these signs. In response, Paramount filed a cross-complaint, which became its third lawsuit seeking signs at the Sunset Boulevard sites (*Paramount III*). The cross-complaint raised various constitutional challenges to the City's signage regulatory scheme, including a challenge to the City's regulation of temporary special displays. The California Court of Appeals dismissed that cross-complaint on res judicata grounds, finding that all of Paramounts' claims were resolved in *Paramount I and II*. 10/23/2014 Decision; RJN Exh. C. The People's underlying criminal enforcement action against Paramount is still pending.

## III.    DISCUSSION

**A.    Rule 12(b)(6) authorizes dismissal of an action that fails to state a claim.**

Rule 12(b)(6) tests the legal sufficiency of claims. Dismissal pursuant to Rule 12(b)(6) is appropriate where a plaintiff cannot establish a "plausible" set of facts in support of its claim which would entitle it to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court may also properly look beyond the complaint to

6

1    documents integral to the claims and whose authenticity is not questioned, such as

2    matters of public record.  *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).

3    **B.      In *Paramount III*, the state Court of Appeals concluded that Paramount's**

4    **prior federal lawsuits have res judicata effect under California law.**

5         In *Paramount III*, the California Court of Appeals held that the federal court

6    decisions in *Paramount I* and *II* had preclusive effect upon Paramount's claims

7    relating to the Sunset Boulevard sites.  The Court of Appeals began its analysis by

8    laying out California's three element test for res judicata: "1.  [T]he decision in the

9    prior proceeding is final and on the merits; 2.  [T]he present proceeding is on the same

10   cause of action as the prior proceeding; and 3.  [T]he parties in the present proceeding

11   or parties in privity with them were parties in the prior proceeding.'"  10/23/14

12   Decision, at p.11 (citing to *Federation of Hillside & Canyon Assns. v. City of Los*

13   *Angeles*, 126 Cal.App.4th 1180, 1202 (2004); and *Villacres v. ABM Industries Inc.*,

14   189 Cal.App.4th 562, 577 (2010)).

15        This test relies on the "primary rights" doctrine of defining a cause of action,

16   which is followed in California.  Under this doctrine, the invasion of one "primary

17   right" gives rise to a single cause of action, even though there might be several

18   remedies available to protect that primary right.  *Frommhagen v. Board of*

19   *Supervisors*, 197 Cal.App.3d 1292, 1299-1300 (1987).  A prior judgment has

20   preclusive effect on all matters that were raised or ***could have been raised*** concerning

21   that primary right.  *Amin v. Khazindar*, 112 Cal.App.4th 582, 589-590

22   (2003)(emphasis added).  This rule prevents a party from purposefully withholding

23   issues and litigating them in consecutive actions.  *Id.*

24        In *Paramount III*, the Court of Appeals found that the first element was met

25   because the judgments in *Paramount I* and *II* were both "final judgments on the merits

26   for res judicata purposes."  10/23/14 Decision, at p. 14; RJN, Exh. C.  The third

27   element was met because Paramount and the City were parties in all three cases.

28

As to the second element, the Court of Appeals concluded that *Paramount III* involved the same primary right as *Paramount I* and *II* – Paramount's redress for the loss of the ability to erect/maintain supergraphic type signs at the Sunset Boulevard sites.  This primary right remained the same in both the earlier and current litigation even though Paramount had challenged completely different City regulations in each litigation.  In the earlier litigation, Paramount had challenged the constitutionality of the City's restrictions on permanent supergraphic signs, while in the current litigation Paramount was challenging the City's restrictions on a different kind of sign, "temporary special displays."  In the Court of Appeals' words:

> The record shows that the primary right [Paramount] seeks to vindicate in its SACC is the same as in the prior litigation.  **Appellants in their SACC seek to redress supergraphics at its Sunset Properties.**  That the challenge is now described in terms of impermissible limitations on content, location and time or date restrictions in the TSD permits it received or unconstitutional denial of permanent supergraphic permits because they were "car ads" and not "entertainment industry" related – as opposed to unconstitutional restrictions on permanent supergraphics generally or unconstitutional denials of Appellants' applications for permits for permanent supergraphics – are merely legal grounds or theories for relief.

*Id*. at p. 16-17 (emphasis added).

The Court of Appeal explained that "[t]he fact that different forms of relief are sought in the two lawsuits is irrelevant, for if the rule were otherwise, "'litigation finally would end only when a party ran out of counsel whose knowledge and imagination could conceive of different theories of relief based upon the same factual background.'"  *Id*. at p. 16.

All three elements of the test having been met, the Court of Appeals concluded that the prior federal cases were res judicata as to the current state case before it and

1    dismissed the entire cross-complaint not only as to Paramount, but also as to its fellow

2    appellants, Patricia High, Sunset Blvd. Properties, LP and Bradley Lawrence Folb. *Id.*

3    at p. 2, 19.

4    **C.    Under federal law, res judicata also precludes all of Paramount's**

5    **claims in this latest lawsuit.**

6        As in *Paramount III*, res judicata forecloses Paramount's latest lawsuit.  The

7    federal courts also refer to res judicata as "claim preclusion."  Under the doctrine of

8    claim preclusion, a final judgment of an action on the merits precludes parties or their

9    privies from relitigating issues that were or could have been raised in that action.  See,

10   e.g., *Detroit Police Officers Ass'n v. Young*, 824 F.2d 512 (6th Cir. 1987).  Claim

11   preclusion encompasses the law of merger and bar, under which a plaintiff in a first

12   suit is precluded from later making any claim that arose out of the same transaction

13   but was omitted from that first suit.  *Migra v. Warren City School Dist. Bd. of Educ.*,

14   465 U.S. 75 (1984).

15       The general test for claim preclusion precludes a party from litigating a claim

16   that was decided in a prior judgment if the following elements are met:  (1) the

17   parties, or those in privity with them, are identical in both suits; (2) the same cause of

18   action was involved in both suits; (3) the prior judgment was rendered by a court of

19   competent jurisdiction; and (4) the prior decision was a final adjudication on the

20   merits.  *Kale v. Combined Ins. Co. of America*, 924 F.2d 1161 (1st Cir. 1991).

21       Here, the first element of the federal claim preclusion test is satisfied because

22   Paramount was a party to three prior cases against the City, *Paramount I*, *II*, and *III*.

23   The third element is satisfied because the judgments in *Paramount I*, *II*, and *III* were

24   rendered by competent federal and state courts.  The fourth element is also satisfied

25   because each of those judgments resolved the entire case.

26       This leaves the second element – having the same cause of action in both the

27   earlier and current suit.  In determining whether two causes of action are sufficiently

28   similar for claim preclusion purposes, the courts employ the transactional test

9

1   recognized by the Restatement Second, Judgments. *Apparel Art Intern., Inc. v.*

2   *Amertex Enterprises Ltd.*, 48 F.3d 576 (1st Cir. 1995).  Under the transactional test, the

3   causes of action are the same if the second action grows out of the same transaction or

4   the same series of transactions as the first action. *Aunyx Corp. v. Canon U.S.A., Inc.*

5   978 F.2d 3 (1st Cir. 1992).  Put another way, the two claims are the same if they arise

6   out of the same nucleus of operative facts. *Apparel Art Intern.*, 48 F.3d 576.  The

7   same nucleus of operative facts can be "redress for essentially the same alleged

8   wrong." *Aunyx Corp.*, 978 F.2d at 8.

9        In order to address the second element, it is necessary to look at the facts in

10   each of the earlier cases.  The facts in *Paramount I* involved "two large office

11   buildings located at 6464 and 6565 West Sunset Boulevard" and Paramount's use of

12   "the Sunset Properties periodically to place signs on the walls of these buildings."

13   06/06/2008 Order, at p. 2, lines 2-7; City's RJN, Exh. A.  Paramount obtained

14   temporary signage display permits for signs on the Sunset Boulevard properties.

15   These permits were valid for only 120 days, but Paramount kept those signs up past

16   the expiration of the 120-day period and "refused to remove the signs or apply for

17   permanent permits." *Id*. at p. 2, lines 15-16.  Paramount then brought a sweeping

18   challenge to the City's sign regulations, including the City's TSD regulations and the

19   City's supergraphic regulations, all for the purpose of eliminating those restrictions on

20   Paramount's desired "right to maintain such signs for twelve months out of the year"

21   as permanent supergraphic signs.  06/06/2008 Order, at p. 3, line 6 to p. 5, line 10; p.

22   2, lines 13-16.

23        Similarly, the facts in *Paramount II* involved Paramount's desire to "erect and

24   maintain 'supergraphic' signs at two locations in Los Angeles:  6464 and 6565 West

25   Sunset Boulevard (the 'Sunset Properties')." *Paramount Contractors and*

26   *Developers, Inc. v. City of Los Angeles*, CV 08-5653 ABC (Aug. 2, 2011)(08/02/2011

27   Decision), p. 2, lines 18-20; City's RJN, Exh. M.  In *Paramount II*, the district court

28   observed that in the case before it Paramount was "alleging essentially ***the same facts***

10

1   ***and claims*** as in *Paramount I* . . . ." *Id*. at p. 2, lines 27-28.  Paramount described the

2   purpose of the lawsuit as follows:  "This lawsuit stems from Plaintiff's attempts to

3   secure rights to erect and maintain supergraphic signage on the exterior walls of two

4   office buildings located at 6464 and 6565 West Sunset Boulevard in Los Angeles."

5   CV 08-05653 ABC, Complaint, ¶ 10; City's RJN, Exh. N.  Paramount enlarged its

6   theories of relief and attacked "almost every aspect of the City's current and former

7   sign regulations" (08/02/2011 Decision, at p. 3, lines 4-6; City's RJN, Exh. M) for the

8   purpose of seeking redress for the "City's repeated refusal to allow Paramount to

9   maintain any additional supergraphic signage at the Sunset Boulevard Properties."

10   CV 08-05653 ABC, Complaint, at p. 4, lines 15-16; City's RJN, Exh. N.

11          The facts in *Paramount III* were the same as in the two earlier cases.

12   *Paramount III* involved the same "two office buildings in Los Angeles, located at

13   6464 and 6565 Sunset Boulevard (collectively Sunset Properties)."  10/23/2014

14   Decision, at p. 2.  In *Paramount III*, Paramount continued seeking redress for

15   "allegedly unconstitutional or impermissible restrictions on its right to erect

16   supergraphics at is Sunset properties." *Id*., at p. 15.  Paramount expanded its legal

17   theories for relief even further than in *Paramount II*, this time to include "alleged

18   violations of the Outdoor Advertising Act . . . , the Unfair Competition Law . . .,

19   public nuisance statutes . . . and Los Angeles Municipal Code (LAMC, § 11.00, subd.

20   (1)) arising from the installation of supergraphic signs on buildings." *Id*.

21          Here, in Paramount's latest lawsuit, *Paramount IV*, the facts again involve

22   Paramount's two "commercial buildings at 6464 and 6565 West Sunset Boulevard in

23   Los Angeles (the "Sunset Boulevard Properties") and Paramount's pursuit of "redress

24   for the City's improper denial of Plaintiff's [Paramount's] attempts to obtain permits

25   for various types of signage on their buildings."  Complaint, ¶¶ 2, 6.  Paramount again

26   asserts a number of theories of relief for the purpose of obtaining permits for signs at

27   the Sunset Boulevard sites, including challenges to the City's regulation of temporary

28   signage (LAMC § 14.4.16); the Amended Hollywood SUD's prohibition of

1    supergraphic signs (L.A. Ord. 181340, § 5.b.; City's RJN, Exh. G); "political signs"

2    on supergraphic signs; the right to a "grandfathered" permanent supergraphic sign;

3    and the right for temporary signs to display off-site messages under the Amended

4    Hollywood SUD and LAMC § 14.4.16.  Complaint, ¶ 26–47.

5         Thus, all of the prior cases, *Paramount I, II, III*, and Paramount's latest case,

6    *Paramount IV*, involve the same nucleus of operative facts in the form of "redress for

7    essentially the same alleged wrong." *Aunyx Corp.*, 978 F.2d at 8.  In all four cases,

8    the redress is for the City's allegedly unlawful restrictions on Paramount's right to

9    erect supergraphic type signs at the Sunset Boulevard sites.  *Aunyx Corp.*, 978 F.2d at

10   8 (earlier and later claims both sought redress for same alleged wrong – copier

11   company's sale of toner cartridges without proper authorization).

12        The courts also look at a number of factors in evaluating whether the earlier

13   lawsuit and the later lawsuit grew out of the same transaction, including the

14   relationship between the underlying facts in terms of time, space, origin, or

15   ***motivation***.  *Apparel Art Intern.*, 48 F.3d 576.  Motivation is a key factor here because

16   Paramount's motivation all along has been to obtain permanent status for

17   supergraphic type signs at the Sunset Boulevard sites.

18        Because Paramount's prior cases and its latest case all involve the same alleged

19   wrong, the second element of the federal res judicata test is satisfied.  *Koury v.*

20   *Canton*, 2005 U.S. Dist. LEXIS 44747, *32 (2005) affirmed by 221 Fed. Appx. 379

21   (6th Cir. 2007)("[I]nterference with [bus bench company's] first amendment right to

22   be free from impermissible content-based restrictions on their bench signs . . ." was

23   "identical cause of action" in both earlier and current litigation); *Metropolitan Dade*

24   *County v. E.B. Elliott Advertising Co.*, 214 So. 2d 511, 512 (1968)(prior decision

25   upholding sign ordinance was res judicata in subsequent criminal enforcement action

26   against sign company for violation of sign ordinance);

27        Because the federal res judicata test is satisfied, all three of Paramount's prior

28   decisions have res judicata effect on Paramount's latest lawsuit.

**D.** **Even if res judicata does not foreclose Paramount's claims, the First Cause of Action fails on the merits because *Reed v. Town of Gilbert* does not affect the validity of the City's sign regulations.**

Even if res judicata does not foreclose Paramount's latest lawsuit, Paramount's claims still fail on the merits.  In the First Cause of Action, Paramount argues that three aspects of the City's sign regulations are content-based and thus violate both the First Amendment and the free speech provision of the California Constitution.  Complaint, ¶¶ 27–39.  These arguments lack merit, as discussed below.

**1.** **Paramount's challenge to LAMC section 14.4.16 under *Reed* lacks merit.**

Paramount argues that LAMC § 14.4.16 (which governs temporary signs) makes a content-based distinction among "political," "ideological" and other signs and is thus subject to strict scrutiny under the United States Supreme Court's recent decision in *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015). Complaint, ¶¶ 28–32.

This argument lacks merit.  First, its characterization of Section 14.4.16 is misleading.  Section 14.4.16 does not distinguish between two different types of noncommercial signage ("political" versus "ideological"), as was the case in *Reed*.  In *Reed*, the Town of Gilbert's sign code imposed size requirements and duration limits that differed depending on a sign's classification as a "political," "ideological," or "temporary directional sign" for religious or non-profit events.  *Reed*, 135 S. Ct. at 2224-25.  The size and duration limits were more restrictive for the last category, temporary directional signs.  *Id*. at 2225.  The United States Supreme Court struck down Gilbert's sign code after explaining that laws that are facially content-based are subject to strict scrutiny regardless of the motivations behind those laws.  *Id*. at 2227-33.

Instead, Section 14.4.16 utilizes the noncommercial/commercial distinction.  Section 14.4.16 does so by requiring a building permit for temporary signs displaying

1  commercial messages, but not requiring a building permit for temporary signs

2  displaying noncommercial messages.

3      The noncommercial/commercial distinction is valid, as upheld by the Supreme

4  Court in its seminal sign law decision in *Metromedia, Inc. v. City of San Diego*, 453

5  U.S. 490 (1981).  Nothing in *Reed* expressly overrules *Metromedia*.  The United

6  States Supreme Court has admonished lower courts to follow the Court's earlier

7  opinions, such as *Metromedia*, until the Court itself expressly overrules them:

8          We reaffirm that "if a precedent of this Court has direct application in

9          a case, yet appears to rest on reasons rejected in some other line of

10         decisions, the Court of Appeals should follow the case which directly

11         controls, leaving to this Court the prerogative of overruling its own

12         decisions." *Rodriguez de Quijas,* 490 U.S. at 484.

13

14     *Agostini v. Felton*, 521 U.S. 203, 235-38 (1997).

15     Justice Alito, in his concurrence in *Reed* joined by Justice Kennedy and Justice

16 Sotomayor, confirms that *Reed* does not abolish the noncommercial/commercial

17 speech distinction.  In his concurrence, Justice Alito lists some of the signage

18 distinctions long considered by the courts to be content neutral.  That list includes

19 cities' long standing and widespread practice of imposing city-wide off-site sign bans:

20 "Rules distinguishing between on-premises and off-premises signs."[3]  *Reed*, 135 S.

21 Ct. at 2233 (J. Alito, J. Kennedy, and J. Sotomayor, concurring op.).  Because such a

22 ban also relies on the noncommercial/commercial distinction, the latter distinction is

23 also untouched by *Reed*.

24

25         [3] Off-premises signs are also known as off-site signs.  Off-site signs "display messages
   directing attention to a business or product not located on the same premises as the sign itself.  For
26 example, a billboard promoting the latest blockbuster movie, but attached to a furniture store, is an
   off-site sign.  The same billboard, when attached to a theater playing the movie, is an on-site sign."
27 *World Wide Rush*, 606 F.3d at 682.

28

1    Without the distinction, courts would be forced to treat all sign regulations as

2    affecting **both** commercial and noncommercial speech.  Courts would then be forced

3    to stop using the intermediate scrutiny test from *Central Hudson Gas & Elec. Corp. v.*

4    *Pub. Serv. Comm'n*, 447 U.S. 557 (1980), which applies only to commercial speech.

5    Instead, the courts would be compelled to use strict scrutiny for all government

6    regulations of signage, which Justice Breyer fears would " . . . write a recipe for

7    judicial management of ordinary government regulatory activity."  *Reed*, 135 S.Ct. at

8    2234 (J. Breyer, concurring and joining J. Kagan).

9    It is also significant that only distinctions among noncommercial speech were

10   before the Ninth Circuit in *Reed*:  "The single issue remanded, and hence the primary

11   substantive issue before the district court and now on appeal, is whether the Sign

12   Code improperly discriminates between ***different forms of noncommercial speech***."

13   *Reed v. Town of Gilbert*, 707 F.3d 1057, 1067 (9th Cir. 2013) reversed by 135 S. Ct.

14   2218 (2015)(emphasis added).  These same distinctions of noncommercial speech

15   were subsequently considered by the Supreme Court, which shows that the Court's

16   decision in *Reed* is limited to those distinctions.

17   Other district courts in California have already found that *Reed* does not

18   overturn *Metromedia* and the noncommercial/commercial distinction.  *See*, *e.g*.,

19   *California Outdoor Equity Partners; and AMG Outdoor Advertising, Inc. v. City of*

20   *Corona*, Case No. CV 15-03172 MMM, Order Granting Defendant's Motion to

21   Dismiss/Stay; Denying Motion for Preliminary Injunction (C.D. Cal. July 6, 2015)

22   ("The fact that *Reed* has no bearing on this case is abundantly clear from the fact that

23   *Reed* does not even cite *Central Hudson*, let alone apply it.  *Metromedia*, 453 U.S. at

24   511-14, and its progeny remain good law; the City's sign ban is therefore not patently

25   unconstitutional."); City's RJN, Exh. J, p. 188; *Contest Promotions, LLC v. City and*

26   *County of San Francisco*, Case No. 15-cv-00093-SI (N.D. Cal July 28, 2015); City's

27   RJN, Exh. K; and *Citizens for Free Speech, LLC v. County of Alameda*, No. C14-

28   02513 CRB (N.D. Cal. July 16, 2015); City's RJN, Exh. L.

### 2.      Paramount's challenge to "other types of off-site signs" under *Reed* lacks merit.

Paramount's second argument is that the City's regulation of "off-site signs" on the Sunset Boulevard sites is content-based under *Reed* and therefore subject to strict scrutiny.  Complaint, ¶ 33.

There is no merit to this argument.  Paramount is referring to the Amended Hollywood SUD's time, place and manner restrictions on offsite signs in the Hollywood area.  L.A. Ord. No. 181340, § 5.D; City's RJN, Exh. D.  These restrictions are lawful under *Outdoor Systems, Inc. et al v. City of Mesa*, 997 F.2d 604 (9th Cir. 1993).  In that case, the Ninth Circuit upheld a zoning scheme that prohibited off-site signs in commercial, but not residential, zones of a city.  The Ninth Circuit upheld the zoning scheme as it applied to commercial signs under the *Central Hudson* intermediate scrutiny test used to evaluate restrictions on commercial speech; the Ninth Circuit also upheld the zoning scheme as it applied to noncommercial signs under the intermediate scrutiny test used for content-neutral time, place and manner restrictions on noncommercial speech.

Here, the Amended Hollywood SUD's restrictions on offsite signs also satisfy the *Central Hudson* and time, place and manner tests.  *Reed* does not alter this result.  As explained above, *Reed's* holding is limited to content-based distinctions among different categories of non-commercial speech.  Nothing in the Amended Hollywood SUD's time, place and manner restrictions on offsite signage makes that type of content-based distinction.  Therefore, Paramount's challenge to the Amended Hollywood SUD's restrictions on offsite signage is completely foreclosed.

### 3.      Paramount's challenge to restrictions on political campaign signs lacks merit.

Paramount makes a third argument that the City violates the First Amendment.  That argument asserts that the City discriminates against Paramount by forbidding Paramount from displaying political campaign messages on supergraphic signs at the

16

1   Sunset Boulevard sites yet allowing other parties to display "commercial messages via

2   supergraphics both in the Hollywood Signage District and elsewhere in the City."

3   Complaint, ¶ 34.

4        This charge of discrimination by the City is a red herring.  The real issue is

5   whether any supergraphic signs are allowed at all at Paramount's Sunset Boulevard

6   properties.  The answer is "no" because the Hollywood SUD as currently written

7   prohibits supergraphic signs[4].  Amended Hollywood SUD, § 5.B.  RJN, Exh. D. Thus,

8   the City is not discriminating against Paramount's political campaign signs in favor of

9   commercial offsite advertising; the City is simply enforcing the SUD's current

10  prohibition on new supergraphic signs against Paramount.

11       **4.   Each of these three arguments also makes a challenge based on the**

12            **California Constitution, which is foreclosed by the Ninth Circuit's**

13            **prior decisions in *Paramount I* and *Vanguard v. City of Los Angeles*.**

14       The free speech clause of the California Constitution is incorporated into each

15  of the three arguments discussed above.  This challenge, however, is foreclosed by the

16  district court's ruling in *Paramount I*.  In that case, the district court relied on

17  *Vanguard*, 648 F.3d 737 (2011) to reject Paramount's claim based on the California

18  Constitution:

19            Paramount alleges that the California Constitution imposes stricter

20            requirements for regulating commercial speech than the First Amendment,

21            and it claims that the City's Sign Regulations independently violate the

22            California Constitution. The Ninth Circuit rejected this same contention in

23            Vanguard, 648 F.3d 737, 2011 U.S. App. LEXIS 11363, 2011 WL

24            2175891, at *10. Because the California Constitution's protection of

25            commercial speech is coextensive with the protection under the First

26  _____

        [4] The Ninth Circuit has already held that the SUD's prohibition on supergraphic signs does
27  not violate the First Amendment.  That holding has preclusive effect here.  *Paramount*, 516 Fed.
    Appx. 614, 616.

28

1    Amendment, Paramount's state constitutional claims fail for the same

2    reasons and must be DISMISSED WITH PREJUDICE.

3

4    *Paramount I*, 805 F. Supp. 2d 977, 1002 (2011).[5]

5  **E.    The first part of Paramount's Second Cause of Action lacks merit because**

6  **     Paramount is not entitled to grandfather rights for supergraphic signs at**

7  **     the Sunset Boulevard sites.**

8    In the first part of its Second Cause of Action, Paramount asserts that in 2005

9    the City granted approvals for "supergraphic signs" at the two Sunset Boulevard sites,

10   which now entitle those signs to grandfather status as permanent supergraphic signs

11   under Section 6.K of the Hollywood SUD.  Complaint, ¶ 42.

12   This argument lacks merit for two reasons.  First, Paramount already made

13   essentially the same argument in *Paramount II*.  There, Paramount claimed that the

14   City violated the First Amendment "under the Amended Hollywood SUD, its permit

15   applications are, or should have been, 'grandfathered,' or deemed 'vested.'" CV 08-

16   05653, Second Amended Complaint, ¶ 62.  The district court dismissed that claim with

17   prejudice on the grounds that Paramount had "not pled a claim that its permits were

18   wrongfully denied" and that even "'wrongfully denied' permits do not give rise to

19   vested rights under California law."  08/02/2011 Decision, at p. 44, lines 22-27.  Under

20   the preclusion principles discussed above, the district court's ruling in *Paramount II*

21   forecloses Paramount's attempt to revive this grandfathering argument.

22   In any event, this claim lacks merit on its face.  Section 6.K of the

23   Hollywood SUD provides grandfather rights only for "developments where

24   a ***Project Permit Approval for Supergraphic Signs*** was granted on or before

---

25   [5] Even if *Paramount I* has no preclusive effect here, this claim would still be foreclosed by the
     Ninth Circuit's ruling in *Vanguard* that the California Constitution's protection of commercial speech

26   is coextensive with the protection under the First Amendment.  *Johnson v. Symantec Corp.*, 58 F.
     Supp. 2d 1107, 1111 (N.D. Cal. 1999)("circuit courts' interpretation of state law must accorded great

27   deference by district courts within circuit.")

28

November 12, 2008 . . . ." L.A. Ord. No.181340 (emphasis added); City's RJN, Exh. D.  Prior to its amendment in 2010, the Hollywood SUD used this project permit compliance process to authorize permanent supergraphic signs.  L.A. Ord. 176172, § 6.C.  Project permit compliance for a supergraphic sign required, among other things, the removal of a specified amount of existing signage as a condition of approval for the new supergraphic sign.  *Id*. § 6.M (requirements for supergraphic signs); § 9 (sign reduction program).

The 2005 approvals granted by the City were for Temporary Special Displays, ***not*** for permanent supergraphic signs:

> The City approved two TSD applications from Paramount.  The first was approved on March 6, 2005, at 6464 Sunset Boulevard and the second was on December 31, 2005, at 6565 Sunset Boulevard.  The approvals for both applications could only be used once, for a total of 120 days during a calendar year.  The approvals would also expire if not used within two years of issuance. Paramount used these approvals and obtained TSD permits on May 15, 2006 and June 29, 2006.  Paramount apparently erected and maintained TSD's until 2010—without obtaining additional approvals or permits from the City.

*Paramount II*, LASC B246564, at p. 4 (emphasis added).

Because Paramount did not obtain project permits for permanent supergraphic signs in 2005, Paramount is not entitled to grandfather rights to those types of signs.

19

# IV. CONCLUSION

This lawsuit is a minimally repackaged version of Paramount's three prior lawsuits, all of which have all been soundly rejected by the courts. This court should do likewise.

Dated: September 21, 2015       **MICHAEL N. FEUER,** City Attorney
                                **TERRY KAUFMANN MACIAS,** Asst. City Attorney
                                **KENNETH T. FONG,** Deputy City Attorney

                                By  *Kenneth Fong*

                                **KENNETH T. FONG**
                                Deputy City Attorney

                                Attorneys for Defendant
                                City of Los Angeles

m:\real prop_env_land use\land use\kenneth fong\my litigation cases post 6 2015\folb partnership v city of los angeles\litigation\motion to dismiss 2.doc

20

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 200 North Main Street, 701 City Hall East, Los Angeles, California 90012-4131.

On September 21, 2015, I served the foregoing documents described as: **DEFENDANT CITY OF LOS ANGELES' MOTION TO DISMISS COMPLAINT** on all interested parties in this action by placing the original or a true copy thereof enclosed in a sealed envelope addressed as follows:

HARDER MIRELL & ABRAMS LLP
Douglas E. Mirell, Esq.
Dilan A. Esper, Esq.
132 S. Rodeo Drive, Suite 301
Beverly Hills, California 90212


[X] **(BY MAIL)** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under the practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California, that the foregoing is true and correct.

Executed on September 21, 2015, at Los Angeles, California.

ZENIA RIVERA ALMOZARA

21